UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 11-21227-CIV-LENARD

ABDELAZIZ BILAL HAMZE,

    Plaintiff,

Vs.

SGT. JOHN DOE, et al.,

    Defendants.

_____/

**PLAINTIFF'S OMNIBUS MOTION IN LIMINE
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Abdelaziz Bilal Hamze ("Hamze"), pursuant to Rules 401, 403, 404 and 609 of the Federal Rules of Evidence and this Court's Order during the Pretrial Conference on May 11, 2015 [DE 223], files this Omnibus Motion in Limine and incorporated memorandum of law seeking entry of Orders excluding evidence or argument regarding the following:

(1) the details of the felony for which Hamze was convicted and the length of his sentence, including any references to such information in any documents admitted into evidence because such evidence is inadmissible pursuant to Rule 609 and any probative value it may have is substantially outweighed by the risk of unfair prejudice to Hamze under Rule 403;

(2) any disciplinary reports Hamze has received from the Department of Corrections or grievances Hamze has filed after the August 27, 2009 beating incident giving rise to the excessive force and failure to intervene claims against Defendants in this case because such evidence is irrelevant under Rule 401, is improper character evidence under Rule 404(b), and any probative value it may have is substantially outweighed by the risk of unfair prejudice to Hamze

1

and juror confusion under Rule 403;

(3) that Hamze was unable to identify Defendants by name and/or misidentified the Defendants' names after his assault on August 27, 2009 because under the particular circumstances of this case the probative value of such evidence is substantially outweighed by the risk of unfair prejudice to Hamze, misleading the jury, and – because such evidence will inject collateral litigation and discovery issues into the trial – unduly delaying the trial under Rule 403;

(4) that Hamze accused four officers of being involved with his beating incident but only two are defendants at trial because such evidence is irrelevant under Rule 401, and under the particular circumstances of this case the probative value of such evidence is substantially outweighed by the risk of unfair prejudice to Hamze, juror confusion, and unduly delaying the trial under Rule 403; and

(5) any evidence that Defendant Gonzalez's photograph was among those shown to Hamze in a photographic lineup during the Inspector General's interview with him on August 28, 2009 without Defendants producing the actual photographs and the inspector live at trial to authenticate such photographs because under the circumstances of this case, any probative value such evidence may have is substantially outweighed by the risk of unfair prejudice to Hamze under Rule 403;

As discussed in more detail below, each of these categories of evidence, as well as any associated arguments related to such evidence, should be excluded. Undersigned counsel for Hamze has met and conferred with counsel for Defendants in a good faith effort to resolve these motions as required by Local Rule 7.1(a)(3)(A) and has set forth below the extent to which the parties have reached agreement.

A.   **Introduction**

This is an unlawful use of force and failure to intervene case against Defendants, Orlando Gonzalez ("Gonzalez") and Rita Yeager ("Yeager"), pursuant to 42 U.S.C. § 1983 for violations of Hamze's Eighth Amendment rights while Hamze was an inmate at the South Florida Reception Center ("SFRC"). Hamze alleges that Gonzalez, a corrections officer at SFRC, beat him without necessity or provocation on August 27, 2009 in the control room for K-dorm where his cell was located and that Yeager, a sergeant at the time, observed the beating and failed to intervene. It is undisputed that both Gonzalez and Yeager were working at SFRC on the evening of the incident and that Hamze suffered injuries consistent with a beating. Both Gonzalez and Yeager contend, however, they were not present in K-dorm at the time of the beating.

B.   **Argument on Motions in Limine**

The relevance of evidence is a threshold determination for the Court. Fed. R. Evid. 104. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Even if relevant, evidence "may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Williams v. Consol. City of Jacksonville*, 2006 WL 305916, at *10 (M.D. Fla. Feb. 8, 2006) (granting motion in limine precluding reference to collateral matter "which could confuse the issues, mislead the jury, and lead to a mini-trial on collateral issues causing undue delay"). In determining the relevance of evidence, the Eleventh Circuit has defined the term "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *U.S. v. Hooks*, 147 F. App'x 956, 957-58 (11th Cir. 2005) (internal quotation marks and citations omitted).

3

### 1. Motion to exclude evidence related to Hamze's conviction and sentence (agreed in part and opposed in part).

Hamze does not dispute that he may be impeached pursuant to Federal Rule of Evidence 609 based on the fact that he has been convicted of a felony.[1] Hamze requests, however, the Court to exclude any evidence, whether proffered on opening statement, elicited through testimony or documents, referring to the name and details of that crime and the length of his sentence. Defendants agree that they will "follow Rule 609" and will not identify either the name of the crime for which Hamze was convicted, the details of that conviction, or the length of his sentence, with the caveat that if Hamze "opens the door" to such evidence they reserve the right to question him on the details of his conviction. The parties agree that, absent Hamze's "opening the door," questioning in this area will be limited to the fact of the single felony for which he has been convicted.

Hamze also seek to exclude, via redaction, any statements or references in any document that may be entered into evidence or otherwise published to the jury referring to the name and details of that crime and the length of Hamze's sentence. For example, the August 28, 2009 Department of Corrections Incident Report of the Incident Report filed in this action by Defendants in support of their Motion for Summary Judgment [DE 175] makes specific reference to the crime for which Hamze is incarcerated and the details of that crime. *See* DE 175-2 at p. 7. Defendants do not agree <u>at this time</u> to general redaction of such information but agree to consider it on a document by document basis based on the circumstances at trial. The admissibility of a party's conviction(s) arises in cases, such as this one, where the plaintiff is suing a governmental agency for use of excessive force. *See, e.g., Foulk v. Charrier*, 262 F.3d 687, 699

---

[1] The parties agree, based upon information and belief, that Hamze has been convicted of only a single felony and that he has not been convicted of any misdemeanor involving a crime of dishonesty.

4

(8th Cir. 2001). In those cases, courts have been willing to exclude most of the details of prior convictions because the prejudice would outweigh the probative value. *Id.*

Rule 609 requires a balancing test pursuant to Rule 403 to determine whether the prejudicial value of the evidence outweighs the probative value. In this case, Hamze is claiming that he was removed from his cell at the South Florida Reception Center and beaten. This is not a situation where the officers are claiming that the force used was necessary to subdue and arrest a violent criminal such that the inmate's prior convictions might be relevant to the officers' state of mind – the officers are claiming that they were not involved in the beating. The standard for excessive use of force on a prisoner does not depend on the prisoner's underlying conviction or the length of the prisoner's sentence. The fact that Hamze is serving a 30-year sentence does not have "any tendency to make a fact more or less probable than it would be without the evidence" and the fact is not "of consequence in determining the action." Fed. R. Evid. 401.

While Hamze's credibility may be at issue in this case, the jury will be highly prejudiced by learning of the nature of Hamze's crime and the length of his sentence. The prejudicial effect of this evidence simply outweighs its probative value. Even if the jury does not know the offense for which Hamze was convicted, if they hear that he is serving a 30-year sentence, they will likely make assumptions about the nature of the offense which could unfairly color their impressions of Hamze's character and credibility. The only potentially probative value that Hamze's conviction and sentencing could have on this case is that it would demonstrate that Hamze was in prison at the time of the incident. Hamze will stipulate to the fact of his incarceration, which obviates the need to introduce such evidence.

5

### 2. Motion to exclude disciplinary reports and grievances (unopposed in part).

The sole issue to be tried in this case is whether either or both of the Defendants sadistically and maliciously used unlawful (*i.e.*, excessive) force for the purpose of causing harm to Hamze. Thus, the focus of the trial is on the events of the night of August 27, 2009, the night Hamze was beaten while in Defendants' custody, and the events precipitating the beating in the two weeks before August 27, 2009. There is evidence that Hamze has received disciplinary reports at other facilities to which he was relocated from South Florida Retention after the August 27, 2009 incident. Additionally, Hamze has filed grievances with the Department of Corrections unrelated to the August 27, 2009 beating. Neither the post-incident disciplinary reports nor the unrelated grievances are relevant to any issue before the Court in this action. The introduction of such evidence is almost certain to result in undue prejudice to Hamze. Moreover, it would result in undue delay and be a waste of time, as Hamze would have to present evidence as to each disciplinary report to rebut the implications to be drawn from the introduction of such post-event evidence.[2]

Whether Hamze received disciplinary reports for alleged infractions wholly unrelated to this event is irrelevant to the issue of whether the Defendants violated Hamze's civil rights on August 27, 2009. *See R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F. 3d 690, 698 (7th Cir. 2006) (excluding evidence where "[e]ven if marginally relevant to some issue…could have played little role beyond confusing jurors….keeping this evidence out enabled the court to focus on jurors' attention on the statutory requirements and defenses."); *Redd v. N.Y. State Div. of Parole,* 923 F. Supp. 2d 393 (E.D.N.Y. 2013) (excluding employee's prior disciplinary reports

---

[2] During the Local Rule 7.1 meet-and-confer conference, counsel for Defendants represented that they do not intend to introduce evidence of grievances filed by Hamze but may seek to introduce evidence of post-incident disciplinary reports issued to Hamze.

as inadmissible character evidence with minimal relevance substantially outweighed by the danger of prejudice, confusion of the issues, and undue delay). Moreover, as a disciplinary report is effectively a mere citation, it is not conclusive of anything and contains no findings or conclusions by a final arbiter. Thus, the introduction of post-incident disciplinary reports would require, in effect, a mini-trial on the facts and allegations set forth in each such report.

> **3. Motion to exclude evidence that Hamze was unable to identify the Defendants by name and/or misidentified the Defendants' names after his assault on August 27, 2009 (opposed)**

Hamze anticipates that Defendants will proffer evidence in their opening statement and/or attempt to cross-examine Hamze with evidence that he was unable to identify Defendants by name and/or misidentified their names after his assault on August 27, 2009. While identification issues such as these would typically appear to be probative of Hamze's credibility, under the circumstances of this case they are not, as the following chronology demonstrates:

    a.    Hamze became an inmate at SFRC on August 13, 2007. *See* Defendants' Statement of Uncontested Facts in support of Motion for Summary Judgment at ¶2 [DE 175, p.2];

    b.    On August 27, 2009 at around 11:00 p.m., Hamze claims two male corrections officers at SFRC assaulted and beat him in the officer's station in "K-dorm" while a female and male sergeant stood by and did nothing. *See* Report of Investigation by Florida Department of Corrections Office of Inspector General [DE 175-2, p.10];

    c.    The next morning at approximately 8:40 a.m., Hamze reported the assault to Lieutenant T. Sharpe and delivered a handwritten Inmate Grievance form describing what happened. *See* Inmate Grievance [DE 175-2 at p. 5];

7

  d. In his Affidavit filed in support of Defendants' Motion for Summary Judgment, Lt. Sharpe (now Major Sharpe) recalled that Hamze was injured at the time.  He asked Hamze if he could name the officers involved and Hamze said "no".  *See* Affidavit of Major Sharpe at ¶¶ 2-3 [DE 175-2 at pp.2-3];

  e. Lt. Sharpe interviewed Hamze and prepared an Incident Report.  The Report identifies the officers and sergeants involved in Hamze's assault by their gender, race, and at least for one, body size:  "Black/Male Sergeant"; "Hispanic/Male Officer"; "fat Black/Male Officer"; and "White/Female Sergeant".  *See* Incident Report [DE 175-2 at pp 7-8];

  f. Lt. Sharpe filed his Incident Report in the "MINS" computer data system and a formal investigation was opened by the Florida Department of Corrections Inspector General's office.  *See* Affidavit of Major Sharpe at ¶4 [DE 175-2 at p.2];

  g. The MINS Incident Report form lists two "Subjects" and two "Witnesses".  The Subjects are an "unknown sergeant" and Defendant Orlando Gonzalez.  The Witnesses are an unknown sergeant and Officer Edward D. Williams.  *See* MINS Incident Report [DE 175-2 at pp. 23-24];

  h. It is undisputed that on August 27, 2009, Defendant Orlando Gonzalez and Officer Edward Williams were both assigned as housing officers in K-dorm, where Hamze resided, during the third shift from 4 p.m. to midnight. *See* Affidavit of Williams at ¶2 [DE 175-3, p.2] and Daily Security Roster for August 27, 2009, Third Shift [DE 175-3, p.4];

  i. On August 28, 2007, less than twenty-four hours after Hamze was beaten, Inspector Terry Denmark from the Florida Department of Corrections Office of the Inspector General interviewed Hamze and showed him photographs of various officers by gender and race

8

at which time Hamze correctly identified Defendant Yeager as the white female sergeant who had observed his beating yet failed to intervene to stop it. *See* Report of Investigation by Florida Department of Corrections Office of Inspector General at pp.2-3 [DE 175-2, pp.10-11]; *see also* Incident Report by Florida Department of Corrections Office of Inspector General at pp.2-3 [DE 175-2, pp.16-17];

      j.      Hamze did not identify Defendant Gonzalez from the line up of photos at that time because it is undisputed that Gonzalez's photograph was not among those shown to Hamze. *See id.*

      k.      Hamze also correctly identified Sergeant Jose Tartabull as the black male sergeant who participated in his beating. *See id.*

      l.      Hamze was not told the names of the officers he identified in the photographic line-ups on August 28, 2009.

      m.      Hamze was transferred out of SFRC on August 29, 2009, less than forty-eight hours after his beating and without knowing the names of the officers and sergeants who participated or failed to intervene in the beating.

      n.      Hamze was not provided a copy of the Inspector General's official Report of Investigation when it was finalized on or about October 27, 2009.

      o.      Hamze filed his initial complaint on April 7, 2011 [DE 1] against three John Doe defendants and one Jane Doe defendant alleging that they assaulted and beat him on August 27, 2009 at the South Florida Reception Center (SFRC).

p.  As early as June 2011 and while proceeding *pro se,* Hamze initiated discovery and "motion practice" directed at obtaining a copy of the Inspector General's official investigation report of his beating incident so he could identify the Defendants by the correct names. *See* Hamze's Notice of Non-Compliance of Custodian of Records at Florida Department of Corrections and Request for Relief dated July 6, 2011 [DE 18].

q.  Despite his efforts, which are replete in the docket for this case, Hamze did not see a copy of the Inspector General's official investigation report until on or about July 30, 2013 at which time he promptly moved to amend his complaint to name Defendants by their proper names. *See* Hamze's Motion for Leave to Amend dated August 23, 2013 [DE 111].

First, as the foregoing chronology demonstrates, Hamze did not know the Defendants' names at that time of the beating because he was a new inmate at SFRC. Nevertheless, Hamze accurately described Defendants Yeager and Gonzalez by gender, race and roles in the beating in his written grievance and sworn statements immediately following the beating. Likewise, Hamze consistently described their gender, race and roles in his pleadings beginning with his initial complaint filed on April 7, 2011, which notably named three "John Doe" defendants and "Jane Doe" defendant. Hamze's description of Defendants Yeager and Gonzalez's gender, race and roles in the beating have been consistent throughout four years of his *pro se* court filings in this case.[3]

Second, Hamze <u>did</u> identify Defendant Yeager's photograph in the line-up shown to him by an inspector for the Florida Department of Corrections Office of Inspector General less than

---

[3] Plaintiff anticipates that Defendants will point out in response that Plaintiff described Defendant Gonzalez as being approximately 250 pounds in some statements and later only 200 pounds. This motion does not seek to preclude cross-examination on Defendant Gonzalez's weight.

10

twenty-four hours after his beating. Hamze's correct identification of Defendant Yeager is memorialized in the official report of investigation and incident report prepared as result of that inspection. Defendants relied on these reports and attached copies of them to their Motion for Summary Judgment filed in this case [DE 175-2, pp 9-17]. Hamze did not identify Officer Gonzalez in the line-up because his photograph was not among those shown to him, but the Florida Department of Corrections identified Officer Gonzalez as a "subject" in its own MINS incident report dated August 28, 2009 relating to the beating incident. Defendants also relied on and attached the MINS report to their Motion for Summary Judgment [DE 175-2, pp 23-24]. However, none of the Department of Corrections officials investigating Hamze's beating incident provided him with Yeager nor Gonzalez's names, and Hamze was transferred o a different corrections facility on August 29, 2007, less than forty-eight hours after the beating.

Finally, Hamze repeatedly sought to obtain a copy of the Inspector General's report to learn the true identity of Defendants beginning in June 2011 shortly after he filed his initial complaint. As early as July 6, 2011, Hamze filed a "motion to compel" the production from the Department of Corrections, which had rejected his request for a copy of this public record due to lack of exceptional need [DE 18]. The Court file also reflects Hamze's numerous requests for extensions of time to identify Defendants by their correct names. It was not until July 30, 2013 – after Hamze was deposed by a Defendant who is not party to this case now and had used the incorrect names for Yeager and Gonzalez in his second amended complaint -- that Hamze was allowed to inspect a copy of the official Inspector General's report and related attachments for his assault. This was the first time Hamze saw these documents, and he promptly moved for leave to amend his complaint to add Defendants Yeager and Gonzalez by their correct names [DE 111].

11

Under these circumstances, it would be inherently unfair for Defendants Yeager and Gonzalez to impeach Hamze for not knowing their names or identifying the wrong names for them before he had obtained a copy of the Inspector General's official public report of his investigation.

  **4. Motion to exclude evidence that Hamze accused four officers of being involved with his beating incident but only two are defendants at trial (opposed)**

Defendants have indicated that they likewise intend to proffer evidence in their opening statement and/or attempt to cross-examine Hamze with evidence that he was unable to identify and/or misidentified other officers allegedly involved in the beating that is the subject of this lawsuit. Proceeding *pro se*, and with no effective means of identifying his assailants by name, Hamze attempted, based on the limited information available to him, to name other officers as defendants in this action. For procedural reasons, those officers are not parties to the present action. For the same reasons set forth above with respect to Defendants themselves, Defendants should be precluded from proffering evidence or eliciting testimony regarding Hamze's inability to identify these other assailants by name.[4] Moreover, as these other guards are not parties to this action, whether Hamze could or could not name them is irrelevant to the issues in this action.

Hamze anticipates that Defendants will contend that Hamze's failure to identify these other officers is relevant to his credibility, but all it evidences is his inability to obtain information from Defendants or Defendants' employer to allow him to learn the names of his assailants. Allowing Defendants to proffer or elicit evidence regarding Hamze's frustrated attempts to learn the names of the people involved in the August 27, 2009 beating will result in a

---

[4] To address the confusion likely to result from the fact that only two of the four assailants are defendants in this action, Hamze will seek a jury instruction regarding the absence of the other two assailants.

12

protracted sideshow concerning procedural matters and discovery with respect to people who are not parties to this action, which will have no real effect other than to confuse the jurors. Beyond evidence regarding Hamze's efforts to learn the identities of these additional assailants, Hamze will have to introduce evidence in the form of testimony and pleadings in this case to try to clarify the almost certain confusion the jury will have concerning why these guards are not parties to this action.

The probative value of the evidence of Hamze's confusion over the names of these non-party assailants is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence and should, therefore, be excluded. *See Williams*, 2006 WL 305916, at *10 (granting motion in limine precluding reference to collateral matter "which could confuse the issues, mislead the jury, and lead to a mini-trial on collateral issues causing undue delay").

> **5.    Motion to exclude evidence that Defendant Gonzalez's photograph was among those shown to Hamze in a photographic lineup during the Inspector General's interview with him on August 28, 2009 (opposed)**

Hamze intends to testify he was shown photographs of Hispanic male officers by the Inspector General's investigator on August 28, 2009 and that Defendant Gonzalez's photo was not among them. Counsel for Defendants has represented that he is in possession of the line-up photographs shown to Hamze and has confirmed that Defendant Gonzalez's photo was not among them. Therefore, Hamze moves to exclude any argument, examination or even suggestion that Defendant Gonzalez's photograph <u>was</u> among those shown to him in the photographic lineup. Under the circumstances of this case, any such argument, examination or suggestion without requiring Defendants to produce the actual photographs and bring the

13

inspector live at trial to authenticate them would have little or no probative value but substantial risk of unfair prejudice to Hamze under Rule 403.

### C. Conclusion

For the foregoing reasons, Plaintiff Abdelaziz Bilal Hamze respectfully requests the Court to grant the relief sought in each of the enumerated arguments set forth above in support of his Omnibus Motion.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for Hamze has conferred with counsel for Defendants in a good faith effort to resolve the issues herein. While the parties have reached agreement as to some of the issues, as set forth in more detail above, counsel have been unable to resolve the remaining issues.

> By: *s/ John A. Camp*
> John A. Camp (Fla. Bar No. 848115)
> jcamp@cfjblaw.com
> Gary M. Pappas (Fla. Bar No. 705853)
> gpappas@cfjblaw.com
> CARLTON FIELDS JORDEN BURT, P.A.
> Miami Tower
> 100 S.E. Second Street, Suite 4200
> Miami, FL 33131
> Telephone: (305) 530-0050
> Facsimile: (305) 530-0055

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2015 I electronically filed the foregoing *Omnibus Motion in Limine and Incorporated Memorandum of Law* with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/S/ *Gary M. Pappas*
Gary M. Pappas
Florida Bar No.: 705853

**SERVICE LIST**
**Abdelaziz Bilal Hamze**
**v.**
**SGT. John Doe, et al.,**
**CASE No.: 11-21227-CIV-LENARD**

Ely Anthony Gonzalez
Assistant Attorney General
Ely.Gonzalez@myfloridalega.com
OFFICE OF THE ATTORNEY GENERAL
110 S.E. 6th Street / 10th Floor
Ft. Lauderdale, FL 33301
Telephone (954) 712-4600
Facsimile (954) 527-3702

*Attorney for Defendants*

John J. Bajger
Assistant Attorney General
John.Bajger@myfloridalegal.com
OFFICE OF THE ATTORNEY GENERAL
110 S.E. 6th Street / 10th Floor
Fort Lauderdale, FL 33301
Telephone (954) 712-4600
Fascimile (954) 527-3702

*Co-Counsel for Defendants Rita Yeager and Orlando Gonzalez*

101057287.2